WHIPPLE, J.
 

 pin this suit arising out of a Settlement Agreement and Release and two related promissory notes, defendants appeal from two judgnents. The first judgment was rendered following a limited trial and declared the common intent and agreement of the parties with regard to certain language in the Settlement Agreement and Release and one of the promissory notes. The second judgment granted the motion for partial summary judgment filed by plaintiff, MAPP Construction, LLC (“MAPP”), and therein: (1) ordered that defendant, Southgate Penthouses LLC, pay the unpaid balance on the two promissory notes; (2) ordered that defendants, Robert Day and Janice Day, execute certain documents related to their business, Lionsway LLC, to effectuate a change in ownership; and (3) recognized that defendants, R.W. Day Development LLC and Robert W. Day, are guarantors of the debt of Southgate Penthouses LLC. For the following reasons, we affirm in part and reverse in part.
 

 FACTS AND PROCEDURAL HISTORY
 

 On August 21, 2003, MAPP, as general contractor, entered into two written contracts with owners, Southgate Residential Towers LLC and Southgate Penthouses LLC, for the construction of a large apartment complex and penthouses located on Nicholson Drive in Baton Rouge, Louisiana. The contracts were valued at $31,192,532.00 and $4,964,687.00 respectively. On that same date, Southgate Penthouses LLC and MAPP also entered into a “Fee Agreement,” wherein South-gate Penthouses LLC agreed to pay MAPP the sum of $500,000.00 for the redemption of MAPP’s interest in Southgate Residential Towers LLC.
 

 On June 14, 2004, Southgate Penthouses LLC and MAPP also entered into a contract for the performance of specified
 
 *552
 
 change orders valued at | .¡$4,593,560.63 (“the Change Order Contract”). Thereafter, on February 3, 2005, to resolve a dispute over the actual value of certain change orders (identified as CPR Nos. 1-129), MAPP and Southgate Penthouses LLC entered into an “Agreement in Principal [sic].”
 
 [1]
 
 Later, on August 22, 2005, MAPP and Southgate Penthouses, LLC entered into a “Settlement Agreement and Release,” which formalized their resolution of the dispute over the enumerated change orders and superseded the Agreement in Principal.
 
 [2]
 

 Pursuant to paragraph number 1 of the Settlement Agreement and Release, Southgate Penthouses LLC agreed to pay MAPP the sum of $5,000,000.00 “minus an amount to be determined for backcharg-es,” in full settlement of all of MAPP’s claims for “additional compensation under any contract or agreement with Southgate Penthouses LLC, and Southgate Residential Towers LLC,” including CPR Nos. 1-129. (Emphasis added). Attached to the Settlement Agreement and Release was a list of backcharges, which the Southgate defendants contended should be applied as a credit against the settlement amount and the value of which the parties agreed to negotiate in good faith.
 

 The Settlement Agreement and Release further provided as follows:
 

 The parties hereby acknowledge that this Agreement is executed to avoid any additional negotiation or litigation arising out of or in any way involving the change orders, except as to the amount and validity, if any, of the claimed backc-harges referenced in Paragraph No. 1. MAPP represents that Note #1 represents a novation of its earlier claims for change orders through the Effective Date, and that any action by MAPP to collect on such claimed backcharges shall be to file a suit and claim on Note # 1 and to assert and enforce any and all | conventional and legal security rights that might exist, including but not limited to those referenced herein.
 

 The Settlement Agreement and Release also recognized that certain credits might exist for other claims by Southgate Penthouses LLC that were not included in the negotiated settlement amount. Specifically, it provided that the release and the calculation of the amount due excluded any claims relating to various lawsuits that had been filed, claims relating to certain alleged construction defects, any future warranty claims, and claims for additional compensation for CPR Nos. 130 and above. Pursuant to the Settlement Agreement and Release, these excluded amounts were to be separately negotiated by the parties, and if they were unable to agree, the parties agreed to submit the disputed issues to arbitration, as provided in the construction contracts.
 

 Nonetheless, while the Settlement Agreement and Release provided that the above disputed issues and sums were specifically excluded from the calculation of the amount due, the Settlement Agreement and Release further provided as follows:
 

 Should an arbitrator determine.that additional amounts are due, such amounts shall increase the Settlement Amount by Southgate Penthouses LLC, or if
 
 *553
 
 awarded consistent with the HUD Contract, then Southgate Residential Towers LLC. Should an arbitrator determine that credits are due, such amounts shall decrease the Settlement Amount. The arbitrator, or court, shall determine if such credits reduce the settlement amount, or is [sic] to be considered as a payment under paragraph 4.[
 
 3
 
 ]
 

 (Emphasis added).
 

 On the same date that the Settlement Agreement and Release was executed, Southgate Penthouses LLC also executed a promissory note (“Promissory Note No. 1”) in favor of MAPP for the principal sum of | s$5,000,000.00 plus interest, “which is equivalent to the Settlement Amount” as defined in the Settlement Agreement and Release, “less all payments of principal previously paid to MAPP in accordance ■with [the] Settlement Agreement, less such additional credits as are provided for in [the] Settlement Agreement.” (Emphasis added). Promissory Note No. 1 set forth a payment schedule whereby Southgate Penthouses LLC agreed to make consecutive monthly installments, “until the total amount of principal and interest is paid in full.” Promissory Note No. 1 also contained a Default and Acceleration clause that provided as follows:
 

 MAPP shall have the right, at its option, to declare this Note to be in default and to insist upon immediate payment (to accelerate the maturity) of this Note if MAKER fails to make any payment due under this Note as and when due, and such failure continues for a period of fifteen (15) days following receipt by MAKER of written notice of default from MAPP.
 

 Additionally on that date, Southgate Penthouses LLC executed a second promissory note (“Promissory Note No. 2”) in favor of MAPP in the principal sum of $500,000.00, representing the balance owed to MAPP under the Fee Agreement. This note was non-interest bearing and provided that Southgate Penthouses LLC would make consecutive monthly payments on the note, beginning after the total amount of principal and interest was paid on Promissory Note No. 1, “until the total amount of principal is paid in full.” Promissory Note No. 2 also contained a Default and Acceleration clause, providing as follows:
 

 MAPP shall have the right, at its option, to declare this Note to be in default and to insist upon immediate payment (to accelerate the maturity) of this Note if MAKER fails to make any payment due under this Note as and when due, and such failure continues for a period of ten (10) days or more.
 

 Subsequent to the execution of the Settlement Agreement and Release and the two promissory notes, Southgate Penthouses LLC became | ^delinquent on several payments on Promissory Note No. 1 and ultimately failed to make any further payments on the note subsequent to the December 2005 payment. Accordingly, MAPP sent written notice to Southgate Penthouses LLC and the alleged guarantors of the note that the note was in default and that payment of the note had been accelerated.
 

 When Southgate Penthouses LLC failed to pay, MAPP instituted this suit in July 2006, seeking,
 
 inter alia,
 
 to recover from Southgate Penthouses LLC the full balance due on Promissory Note No. 1, with interest and attorney’s fees of 25% of the principal and interest due, and the $500,000.00 balance due on Promissory Note No. 2, with interest and attorney’s
 
 *554
 
 fees of 25% of the principal and interest due.
 
 [4]
 
 MAPP further sought: (1) judgment against R.W. Day Development LLC in the amount of $2,500,000.00, pursuant to a Continuing Guaranty Agreement; (2) judgment against Robert Day in the amount of $1,000,000.00, pursuant to an alleged personal guaranty agreement; and (3) a mandatory injunction commanding Robert and Janice Day to execute documents to effect a transfer of 100% of their 17combined interest in Lionsway LLC to MAPP, pursuant to certain terms in the Settlement Agreement and Release. Defendants filed an answer, raising numerous defenses.
 
 [5]
 

 Thereafter, MAPP filed a motion for partial summary judgment, contending that, as a matter of law, it was entitled to judgment in its favor: (1) ordering payment of the balance of the two promissory notes; (2) issuing a mandatory injunction requiring Robert Day and Janice Day to execute documents to effectuate a transfer in membership ownership of Lionsway LLC to MAPP; (3) recognizing the continuing guaranty agreement of R.W. Day Development LLC and rendering judgment against it, pursuant to the agreement, in the amount of $2,500,000.00, with interest; and (4) recognizing the personal guaranty of Robert Day and granting judgment in favor of MAPP and against Robert Day in the amount of $1,000,000.00, with interest.
 

 Defendants opposed the motion, contending that Promissory Note No. 1, unlike most promissory notes, did not contain an unconditional promise to pay a sum certain. Rather, they contended that the note specifically provided for the “reduction of the principal payments” by credits
 
 *555
 
 provided for in the Settlement Agreement and Release, which credits had not yet been determined. Defendants further asserted that the “credits” provided for “clear[ly]” included credits relating to warranty claims and claims relating to the alleged failure of MAPP to complete the work in accordance with the terms of the construction contracts. Alternatively, defendants contended that | Rthe term “credits” in Promissory Note No. 1 and in the Settlement Agreement and Release was ambiguous, thereby precluding summary judgment.
 

 Following a hearing on the motion, the trial court rendered judgment, granting MAPP’s motion for partial summary judgment. Thus, the trial court: (1) ordered Southgate Penthouses LLC to pay MAPP the unpaid balance on Promissory Notes Nos. 1 and 2; (2) ordered Robeit and Janice Day to effectuate a change in membership ownership of Lionsway LLC to MAPP; (3) found that R.W. Day Development LLC was liable as guarantor of the debt of Southgate Penthouses LLC, in the amount of $2,500,000.00, plus legal interest; and (4) found that Robert Day was liable as guarantor of the debt of South-gate Penthouses LLC, in the amount of $1,000,000.00, plus legal interest.
 

 From this judgment, the defendants appealed, and on appeal, this court reversed the grant of summary judgment.
 
 MAPP Construction, LLC v. Southgate Penthouses, LLC,
 
 2008 CA 0012 (La.App. 1st Cir.6/6/08), 986 So.2d 255 (unpublished). In so ruling, this court noted that Promissory Note No. 1 provided that Southgate was to pay MAPP the principal sum of $5,000,000.00, less such additional credits as are provided for in Settlement Agreement. Thus, reference had to be made to the Settlement Agreement and Release to determine the actual amount due under Promissory Note No. 1.
 
 MAPP Construction, LLC,
 
 2008 CA 0012 at pp. 10-11.
 

 In reviewing the Settlement Agreement and Release to determine whether MAPP had established its entitlement to summary judgment, this court noted that the Settlement Agreement and Release clearly contemplated a “backcharge credit” to be negotiated in good faith by the parties. RHowever, the agreement additionally contemplated that “credits” for other disputed issues between the parties could also reduce the Settlement Amount. While the Settlement Agreement and Release provided that the calculation of the amount due “specifically exclude[d]” those other disputed issues, such as lawsuits filed by MAPP’s subcontractors, defective construction claims, and warranty claims, the agreement further provided that should an arbitrator determine that credits were due for these disputed claims, “such amounts shall decrease the Settlement Amount” and that the arbitrator or court “shall determine if such credits reduce the settlement amount.”
 
 MAPP Construction, LLC,
 
 2008 CA 0012 at p. 12.
 

 While noting that generally, an unliqui-dated claim for damages cannot be pleaded in compensation against a liquidated claim based on a promissory note,
 
 American Bank v. Saxena,
 
 553 So.2d 836, 844-845 (La.1989), this court further observed that while a liquidated sum cannot be offset by an unliquidated sum by operation of law, LSA-C.C. art. 1901 provides that compensation may also take place by agreement of the parties, even though the requirements for compensation by operation of law are not met.
 
 MAPP Construction, LLC,
 
 2008 CA 0012 at pp. 12-13.
 

 Thus, this court concluded that inasmuch as the parties apparently had contractually agreed to some credits,
 
 i.e.,
 
 setoff or compensation, the unresolved question of what credits, if anjr, should be
 
 *556
 
 applied to reduce the amount due on Promissory Note No. 1 was sufficient to preclude summary judgment. This court held that, at best, the Settlement Agreement and Release, referenced in Promissory Note No. 1 for the determination of the amount due on the promissory note, was ambiguous as to what credits would reduce the Settlement Amount, and consequently, the amount due on Promissory Note No. 1.
 
 MAPP Construction, LLC,
 
 2008 CA 0012 at pp. 14-15. Noting that summary judgment is rarely appropriate where a question remains as to the meaning of or intent behind certain provisions of a contract,
 
 Lacrouts v. Succession of Longo,
 
 2004-1938 (La.App. 1st Cir.9/23/05), 923 So.2d 717, 719, this court concluded that MAPP had failed to prove its entitlement to summary judgment because the contract provisions herein relating to “credits” that would reduce the promissory note amount were unclear and susceptible to multiple, inconsistent interpretations. Accordingly, this court reversed the trial court’s grant of partial summary judgment in favor of MAPP and remanded the matter to the trial court “for further proceedings, to be conducted as expeditiously as possible, consistent with the views expressed” therein.
 
 MAPP Construction, LLC,
 
 2008 CA 0012 at p. 15.
 

 After the matter was remanded, the trial court conducted a pretrial conference on July 17, 2008. At that time, the trial court indicated that the purpose of the conference was to select a trial date for a limited trial to determine “the intention of the [parties] as to ... what credits mean within the documents involved.”
 
 [6]
 
 Defense counsel requested that this issue be tried |nto a jury, and a limited jury trial was conducted on October 14, 16, and 17, 2008, on the issue of the parties’ intention as to the application of any credits to the settlement amount and promissory note balance. Following the trial, the jury rendered its verdict, answering the questions presented to it as follows:
 

 1. Did the parties agree, and was it their common intent, that any “backcharges,” “warranty claims,” or other construction claims would
 
 *557
 
 not become a “credit” against the Promissory Note until an arbitrator (or court) made a determination of such claim?
 

 (Check only one) / Yes
 

 _No
 

 2. Did the parties agree, and was it their common intent, that Southgate had the right to stop making the monthly payments on the Promissory Note prior to an arbitrator (or court) making a determination on any such claims?
 

 (Check only one) Yes
 

 / No
 

 In conformity with the jury’s verdict, the trial court then rendered judgment, dated August 23, 2008, declaring the common intent of the parties to be: (1) that any “backcharges,” “warranty claims,” and other construction claims would not become a “credit” against Promissory Note No. 1 until an arbitrator or court made a determination of such claim; and (2) that defendants did not have the right to stop making monthly payment until such a determination was made on any such claims.
 

 Thereafter, MAPP again filed a motion for partial summary judgment, asserting that no material issues of genuine fact were in dispute and that it was entitled to judgment in its favor as a matter of law: (1) ordering payment of the balance due on the two promissory notes; (2) ordering the | ^transfer to MAPP of the ownership interest of Robert and Janice Day in Lions-way LLC; (3) recognizing a continuing guaranty by R.W. Day Development LLC; and (4) recognizing a personal guaranty by Robert Day. Defendants opposed the motion, arguing that Southgate had numerous legal defenses, with inherent genuine issues of material fact, which prevented the granting of summary judgment in favor of MAPP.
 

 Following a hearing on the motion, the trial court granted partial summary judgment in favor of MAPP: (1) ordering Southgate Penthouses LLC to pay MAPP the unpaid balance on Promissory Note No. 1 in the amount of $2,774,325.80, together with accrued interest in the amount of $611,111.76 and interest at the contractual rate of
 
 8%
 
 from November 2, 2008, until paid; (2) ordering Southgate Penthouses LLC to pay MAPP the unpaid principal balance of Promissory Note No. 2 in the amount of $500,000.00, together with legal interest from the date of judicial demand until paid; (3) recognizing R.W. Day Development LLC as liable to MAPP as guarantor of the debt of Southgate Penthouses LLC, in the amount of $2,500,000.00, with legal interest from the date of judicial demand until paid by Southgate Penthouses LLC, and further rendering judgment in favor of MAPP and against Southgate Penthouses LLC in that sum; (4) recognizing Robert Day as liable to MAPP as guarantor of the debt of Southgate Penthouses LLC, in the amount of $1,000,000.00, with legal interest from the date of judicial demand until paid by Southgate Penthouses LLC, and further rendering judgment in favor of MAPP and against Robert Day in that sum; and (5) ordering Robert Day and Janice Day to appear before the trial court and execute an “Act of Sale” and documents to amend the Articles of Incorporation and the Operating Agreement of Lionsway, LLC, to effectuate a change in membership ownership to MAPP.
 

 1 iaFrom this judgment and from the judgment rendered in accordance with the jury’s verdict on the issue of the intent of the parties as to the term “credits,”
 
 [7]
 
 defendants appeal, contending that:
 

 
 *558
 
 (1) The trial court erred by bifurcating the affirmative defense claims from the issues on the Settlement Agreement without Southgate’s consent during the October 2008 jury trial and leaving all remaining issues to be tried to a separate jury, in contradiction of LSA-C.C.P. art. 1562 and 1736;
 

 (2) The trial court erred in granting summary judgment when no documents were introduced into evidence;
 

 (3) The trial court erred in striking Robert Day’s affidavit;
 

 (4) The trial court erred in granting MAPP’s motion for partial summary judgment when Southgate Penthouses LLC pled and provided supporting facts to show a failure of consideration in making the promissory note;
 

 (5) The trial court erred by granting MAPP’s motion for partial summary judgment when Southgate Penthouses LLC pled and provided supporting facts to show that MAPP’s defective construction made the promissory note impossible to perform by Southgate Penthouses LLC;
 

 (6) The trial court erred by granting specific performance on the transfer of property due to MAPP’s lack of clean hands and lack of performance;
 

 | u(7) The trial court erred by granting MAPP’s motion for partial summary judgment on a guaranty against Robert and Janice Day as guarantor when there was no written guaranty by Robert and Janice Day;
 

 (8) The trial court erred in dismissing the affirmative defenses to the payment of the note based upon MAPP’s argument that the First Circuit had dismissed those claims in its prior ruling;
 

 (9) During the October 2008 jury trial, the trial court erred by not allowing the admission of evidence of all of the facts and circumstances before and after the execution of the settlement agreement to determine the intent of the parties.
 
 [8]
 

 We will first address the issues raised regarding the October 2008 jury trial and resulting October 23, 2008 judgment, and will then address the issues relating to the subsequent January 29, 2009 judgment granting MAPP’s motion for partial summary judgment.
 

 CHALLENGES TO OCTOBER 23, 2008 JUDGMENT
 

 Alleged Improper Bifurcation of Issues for Trial
 

 (Issue No. 1)
 

 In this argument, defendants contend that pursuant to LSA-C.C.P. arts. 1562 and 1736, their consent for a trial on a limited issue was required and that, because defendants did not consent to such bifurcation, the trial court erred in limiting the trial to the issues relating to interpretation of the Settlement Agreement and Release and in excluding from the trial the affirmative defenses raised by defendants.
 

 
 *559
 
 | ^Louisiana Code of Civil Procedure article 1736 provides that the parties can stipulate that the jury trial shall be as to certain issues only.
 
 [9]
 
 As noted above, at the July 17, 2008 pretrial conference on remand of this matter, the trial court stated that the purpose of the conference was to select a trial date for a limited trial to determine “the intention of the [parties] as to ... what credits means within the documents involved.” In so stating, the trial court explained as follows: “Now, I will tell you, if it turns out that there are any credits that they intended that have not yet been calculated, we can’t go forward with the suit on the note until they’re calculated.” Clearly, the trial court was alluding to the fact that the construction-defects claims, which could result in “credits” to be applied against the principal sum due on Promissory Note No. 1, were being determined in arbitration proceedings. Thus, the trial court obviously recognized that, in the event the trier of fact determined that MAPP was precluded from execution on the notes or acceleration of the balances due until any unliquidated “credits” had been determined, then the issues of construction defects and any potential resulting credits would have to be resolved in the arbitration proceedings before there could be any resolution of this suit on the promissory notes.
 

 Notably, at the time the trial court outlined the manner in which the matter would be handled and the scope of the trial on remand, defense counsel did not object to the court’s limitation of the issues to be presented at trial, but, rather, requested that the issue be tried to a jury. Defense counsel further sought clarification as to whether evidence of the parties’ | ^knowledge of the defects at the time of confection of the settlement agreement would be allowed, as follows:
 

 The only issue that I think that comes up with the defects is any knowledge of defects they had at the time that they were doing the agreement, because there is a group of defects that were discovered after the settlement agreement was executed, but if the evidence shows, hey, you know, Mr. Day says, well, the reason I put that provision in there, because we had discussed the fact that there was a coloration problem on the outside of the stucco, or the defects in that nature, even though limited in scope, would be relevant to why the provision was included.
 

 In response to defense counsel’s concern, the trial court responded that “that sort of evidence would be allowable for a very limited purpose.” Defense counsel then questioned the trial court about the affirmative defenses raised by defendants, and the trial court stated:
 

 Those go to the note themselves [sic]. They don’t go — they do not — Tm not going to have those brought into this. The issue is one of just the intent at the time of the confection of the agreement. I understand what your affirmative defenses are. That’s for a later time when we get to determining whether or not the — they can recover on the note. ... All we’re doing — we’re just — we’re not here for a trial on the merits. Again, it’s only to answer the specific question
 
 *560
 
 that the First Circuit sent it back for.[
 
 10
 
 ] ... If they don’t buy your argument that there was an agreement that unliq-uidated setoffs can delay a liquidated— recovering a liquidated sum, then we’re going to go forward with the trial on the merits of the deal.
 

 Defense counsel then stated, “It would be at that point and time that we would have the right to argue to the court which affirmative defenses were in place and which ones are not.” The court answered, “Right.” In response to this explanation by the court, defense counsel stated, “Yes, sir. Okay.” At no point did defense counsel object to this procedure; rather, defendants clearly acquiesced.
 

 Moreover, on that date, July 17, 2008, defense counsel signed a Case Management Schedule, agreeing that the trial scheduled for October 14, [172008, was “limited to issue of intent of parties as to effect and definition of credits.” It was not until October 2, 2008, two and one-half months after agreeing to a limited trial and only twelve days before the scheduled trial date, that defendants first sought to object and expand the limited trial on the issue of the intent of the parties as to the term “credits” in the Settlement Agreement and Promissory Note No. I.
 
 [11]
 

 Considering the foregoing, we conclude that defendants clearly initially acquiesced or stipulated to the procedure utilized herein. Thus, given defendants’ initial acquiescence, the trial court properly rejected defendants’ belated challenge to the procedure employed by the trial court on remand.
 
 [12]
 

 Trial Court’s Ruling Limiting Evidence at the October 2008 Trial
 

 (Issue No. 9)
 

 Defendants further argue that, with regard to the October 2008 trial, the trial court erred in not allowing the admission of evidence of “all of the surrounding circumstances” before and after execution of the Settlement Agreement and Release, which they contend was relevant to determine the intent of the parties as to the term “credits.” Specifically, defendants contend that the trial court erred in limiting the testimony of Robert Day and defendants’ construction defect experts. According to defendants, the trial court’s ruling limiting evidence of the defects prevented defendants from presenting live expert testimony or from using proffered expert reports to |lsexplain the actions of Southgate Penthouses LLC and Robert Day and also prevented Robert Day from explaining his knowledge of the defects and his reliance on the expert reports as a basis for non-payment of Promissory Note No. 1. Defendants further assert that this ruling prevented defendants from rebutting MAPP’s argument that Robert Day was a “deadbeat” debtor and also “severely limited” defendants’ ability on cross-examination to impeach Mr. Poli-to who they allege testified that no defects existed in the buildings.
 

 
 *561
 
 Generally, all relevant evidence is admissible. LSA-C.E. art. 402. Relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. LSA-C.E. art. 401. Whether evidence is relevant is within the discretion of the trial courjt, and its ruling will not be disturbed on appeal in the absence of a clear abuse of his discretion.
 
 Boudreaux v. Mid-Continent Casualty,
 
 2005-2453 (La.App. 1st Cir.11/3/06), 950 So.2d 839, 845,
 
 writ denied,
 
 2006-2775 (La.1/26/07), 948 So.2d 171. Moreover, an error may not be predicated upon a ruling that admits or excludes evidence unless a substantial right of the party is affected. LSA-C.E. art. 103(A). The party alleging prejudice by the evidentiary ruling of the trial court bears the burden of so proving.
 
 Wright v. Bennett,
 
 2004-1944 (La.App. 1st Cir.9/28/05), 924 So.2d 178, 183.
 

 Prior to trial, MAPP filed a motion in limine seeking to prohibit the introduction of evidence by defendants as to alleged construction defects in the buildings and any expert analysis or opinions as to the alleged defects, arguing that this evidence was not relevant to the issue of the intent of the parties at the time the Settlement Agreement and Release and promissory notes were confected and executed. At the hearing on the motion, the trial 11scourt granted the motion in limine “with the condition that” defendants would be allowed to present “some explanation” about the existence and “magnitude” of the defects, but “no technical explanation.” The court explained that with regard to the alleged defects, “[defendants] can describe them [a]s, well we thought there were some fairly significant ones and we had some that were minor, but the cumulative effect was significant.” However, the court further stated that “to go into the specifics of them is really irrelevant to the intention” and noted that defendants were improperly attempting to “[try their] defect case in front of a jury that doesn’t care about the defects because that has nothing to do with what they’re doing,” which was to make a determination as to “the intent of the parties with regard to the word, ‘credits.’ ”
 

 Also, during trial, defense counsel sought clarification from the court as to whether he could question Robert Day as to why he quit paying on Promissory Note No. 1 and whether Day would be allowed to respond that “he quit paying because he received a bunch of expert reports that said it was going to be about $20 million worth of damage to the building or ... to repaii’ it.” The trial court initially responded that it did not “have a problem” with Robert Day answering in that fashion and again explained its ruling on this issue as follows:
 

 [Defendants’] position has been consistently that [Day] stopped paying, at least that you presented to [the court], that he stopped paying because of defects, and [the court doesn’t] care if he says it’s twenty million and twenty dollars. It doesn’t matter ... what he says it is, as long as we don’t go into the details of them. Okay? If it goes any further than that, what does it have to do with the intent of the parties entering the contract?
 

 However, when counsel for MAPP objected to the trial court allowing Day to testify as to any exact dollar quantification of the costs of repairing alleged defects, the court amended its ruling as follows: “I don’t want 12nnumbers to be brought up, I guess is the bottom line, and I think that that’s consistent with the earlier ruling, but I have no problem with saying substantial and what I believe was in excess of the debt owed, the total debt owed.”
 

 
 *562
 
 Thus, while the trial court ultimately ruled that defendants could not present testimony as to a dollar value of cost of repairing the alleged defects, it ruled that defendants could present testimony to establish that Robert Day believed that defects existed and were substantial and would cost in excess of the amount owed on the debt to repair. The trial court determined that while evidence that there were disputes about alleged defects may be relevant to the issue of intent of the parties in confecting the Settlement Agreement and Release and Promissory Note No. 1, extensive evidence of the specific defects would not be necessary for a jury to determine the intentions of the parties at the time they confected these documents. On review, we find no error in the trial court’s ruling.
 

 In his testimony, Robert Day presented the position of defendants with regard to the calculation of any credits reducing the settlement amount. Specifically, he testified that “the key issue from day one” with regard to negotiating the Settlement Agreement and Release and promissory notes was “the note ... would be subject to the credits that we were going to be due, if any, for any construction problems or any issues with warranty work.” Moreover, consistent with the trial court’s ruling as to the limited relevance of the evidence of the existence and extent of any defects, Robert Day specifically testified that there were construction problems or defects with the buildings and that he eventually stopped making payments on Promissory Note No. 1 when, in his view, the costs of repairing those defects exceeded the value of the promissory note, action which he believed [ 2i he had the right to take under the terms of the Settlement Agreement and Release.
 

 Thus, considering the foregoing, and the record as a whole, we cannot conclude that the trial court abused its discretion in limiting the scope of the defendants’ evidence of the alleged defects by disallowing specific evidence of those defects. Clearly, defendants had the opportunity to present evidence of them position as to whether the parties intended that defendants’ obligations under the Settlement Agreement and Release and the promissory notes would be suspended pending a determination of any offset from any unliquidated claims or credits that may be due as a result of backcharges, warranty claims or construction defects. Thus, given the issues to be determined by the jury, any evidence as to the specific nature of, and cost of repairing, any defects was clearly not relevant to the issues presented at trial,
 
 ie.,
 
 determining the parties’ intent in confecting these documents.
 

 Accordingly, we find no abuse of discretion by the trial court in its evidentiary rulings.
 
 [13]
 

 CHALLENGES TO THE JANUARY' 29, 2009 JUDGMENT GRANTING MAPP’S MOTION FOR PARTIAL SUMMARY JUDGMENT
 

 Mapp’s Alleged Failure to Introduce Evidence in Support of its Motion for Summary Judgment
 

 (Issue No. 2)
 

 Through this argument, defendants contend that the trial court erred in granting MAPP’s motion for partial summary judgment where MAPP failed to offer its supporting documents into evidence at the
 
 *563
 
 January 20, 2009 hearing. We find no merit to this argument.
 

 | a2In connection with its motion for partial summary judgment, MAPP filed a memorandum in support of its motion and numerous exhibits thereto, including: the affidavit of Michael Polito; the Agreement in Principal; the Settlement Agreement and Pelease; Promissory Note No. 1; Promissory Note No. 2; the Agreement to Purchase and Sell Membership Interest of Lionsway LLC; the Continuing Guaranty Agreement of R.W. Day Development LLC; correspondence between the parties; MAPP’s Demand for Arbitration; an Affidavit of Bond by Southgate Penthouses LLC; a summary of rental revenue of the Southgate properties; the affidavit of J. Grif McKowen; and the trial court’s July 17, 2008 Case Management Schedule.
 

 Louisiana Civil Code of Procedure article 966(B) provides that summary judgment shall be rendered “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.” Louisiana Code of Procedure article 966 does not contemplate the necessity of introducing items already filed in the record into evidence at the hearing on the motion for summary judgment.
 
 Johnson v. Slidell Memorial Hospital,
 
 552 So.2d 1022, 1023 (La.App. 1st Cir.1989),
 
 writ denied,
 
 558 So.2d 571 (La.1990). For a document to be considered on a motion for summary judgment, it must be either filed into evidence at the hearing on the motion or filed into the record.
 
 Hopper v. Crown,
 
 560 So.2d 890, 892 (La.App. 1st Cir.1990);
 
 McNamara v. American Liberty Insurance Company,
 
 99-175 (La.App. 3rd Cir.10/13/99), 745 So.2d 704, 706,
 
 writ denied,
 
 99-3233 (La.1/14/00), 753 So.2d 222.
 

 12.<iConsequently, because the exhibits relied on by MAPP were filed into the record below, the evidence was properly before the trial court when it ruled on the motion for summary judgment and is properly before this court on appeal.
 

 Trial Court’s Ruling Striking Portions of Robert Day’s Affidavit
 

 (Issue No. 3)
 

 Defendants next contend that the trial court erred in striking portions of Robert Day’s affidavit, which was offered in opposition to MAPP’s motion for partial summary judgment, where, in his affidavit, Day attested to facts within his own personal knowledge and drew reasonable inferences from his personal observations.
 

 After defendants filed their opposition to MAPP’s motion for partial summary, which opposition included the affidavit of Robert Day, MAPP filed a motion to strike certain paragraphs of Day’s affidavit, contending that the affidavit was “fraught with conclusions of law, impressions, and opinions that do not concern the formation, construction or enforceability of the Promissory Notes forming the basis of MAPP’s Motion for Partial Summary Judgment.” Thus, MAPP contended that certain designated paragraphs of Day’s affidavit and exhibits A4 through A13 attached to Day’s affidavit should be stricken as impressions and opinions and not facts based on Day’s actual knowledge. After considering the motion, the trial court ordered that paragraphs 2, 4, 6, 7, 10, 12, 13, 14, 16, 17 and 22 through 99 of Day’s affidavit together with exhibits A4 through A13 attached to the affidavit be stricken and not considered as “evidence.”
 

 Affidavits offered in support or in opposition to a motion for summary judgment shall be made on personal knowledge and shall show affirmatively that the affi-ant is competent 'to testify to the matters
 
 *564
 
 stated |24therein. LSA-C.C.P. art. 967(A). Moreover, affidavits that are devoid of specific underlying facts to support a conclusion of ultimate “fact” are not legally sufficient to defeat summary judgment.
 
 Lewis v. Four Corners Volunteer Fire Department,
 
 2008-0354 (La.App. 1st Cir.9/26/08), 994 So.2d 696, 700.
 

 A review of the stricken portions of Day’s affidavit reveals that the assertions therein involved legal conclusions, opinions either not reasonably based on his personal knowledge or clearly outside his knowledge or expertise, and alleged facts or factual disputes previously resolved by the October 28, 2008 judgment and jury’s findings as to the parties’ intent in executing the Settlement Agreement and Release and related promissory notes. Accordingly, we find no error in the trial court’s ruling striking those portions of Day’s affidavit.
 

 Dismissal of Affirmative Defenses Allegedly Based Upon This Court’s Prior Ruling
 

 (Issue No. 8)
 

 According to defendants, MAPP argued in support of its motion for partial summary judgment that defendants’ affirmative defenses had already been dismissed by this court in this court’s prior opinion. Defendants further aver that the trial court “apparently agreed with this argument” and, therefore, erroneously granted the motion for partial summary judgment on this basis.
 

 Initially, we note that, contrary to defendants’ argument, in granting the motion for partial summary judgment and, thus, in rejecting defendants’ affirmative defenses, the trial court specifically addressed defendants’ affirmative defenses, stating as follows: “The issues raised by Southgate do not pertain to the note itself. They are issues that belong in another lawsuit and don’t go to whether or not the note is enforceable.” This statement | ^indicates that the trial court did not perceive this court’s prior opinion as precluding further consideration and, instead concluded that the affirmative defenses raised were not valid defenses to MAPP’s right to collect on the promissory notes. Thus, we reject this portion of defendants arguments.
 

 Turning to the propriety of the granting of summary judgment herein, we note that in determining whether summary judgment is appropriate, appellate courts review evidence
 
 de novo
 
 under the same criteria that govern the trial court’s determination of whether summary judgment is appropriate.
 
 Samaha v. Rau,
 
 2007-1726 (La.2/26/08), 977 So.2d 880, 882-883. A motion for summary judgment is properly granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(B). Summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of an action, and the procedure is favored. LSA-C.C.P. art. 966(A)(2);
 
 Samaha v. Rau,
 
 977 So.2d at 883.
 

 Once the moving party has properly supported the motion for summary judgment by submitting affidavits or pointing out the lack of factual support for an essential element in the opponent’s case, the non-moving party must produce evidence of a material factual dispute. Otherwise, the granting of summary judgment will be mandated.
 
 See Samaha,
 
 977 So.2d at 883. As consistently noted in LSA-C.C.P. art. 967, the opposing party cannot rest on the mere allegations or denials of his pleadings, but must present evidence which will establish that material facts are still at issue.
 
 Hunter v. Tensas Nursing Home,
 
 
 *565
 
 32,217 (La.App. 2nd Cir.10/27/99), 743 So.2d 839, 841,
 
 writ denied,
 
 99-3334 (La.2/4/00), 754 So.2d 228.
 

 laiThus, this court will conduct a
 
 de novo
 
 review of the evidence in addressing defendants’ arguments with regard the appropriateness of summary judgment herein and, thus, the rejection of their affirmative defenses argued in opposition to the motion.
 

 Defense of Failure of Consideration
 

 (Issue No. 4)
 

 In this argument, defendants contend that the trial court erred in granting MAPP’s motion for partial summary judgment where defendants pled and provided supporting facts to establish a failure of consideration in the making of Promissory Note No. 1, based on the alleged defects in the construction, and, thus, established a defense to payment of the note. Alternatively, defendants contend that they established the existence of a genuine issue of material fact as to the defense of lack of consideration. They further assert that MAPP is not entitled to payment until this defense is litigated.
 

 “An obligation cannot exist without a lawful cause.” LSA-C.C. art. 1966. Cause is defined as the reason why a party obligates himself. LSA-C.C. art. 1967. Under this article, “cause” is not “consideration.” LSA-C.C. art. 1967, Revision Comments — 1984, comment (c). Louisiana does not follow the common law tradition that requires consideration to effect an enforceable contract. Rather, the mere will of the parties will bind them, without what a common law court would consider to be “consideration” to support a contract, so long as the parties have a lawful “cause.” The cause |a7need not have any economic value.
 
 [14]
 

 Aaron & Turner, L.L.C. v. Penet,
 
 2007-1701 (La.App. 1st Cir.5/4/09), 22 So.3d 910, 915 (on rehearing).
 

 In this case, each party had “cause” to enter into the Settlement Agreement and Release. As set forth in the Settlement Agreement and Release, a dispute had developed between MAPP and Southgate Penthouses LLC as to the amount due for certain additional or changed work under the Change Order Contract entered into by the parties, with MAPP contending that the amount due for changes in work identified by CPR Nos. 1 through 129, was approximately $5,500,000.00 and Southgate Penthouses LLC contending that the amount due was approximately $4,600,000.00 minus certain backcharges and construction claims. The parties’ agreement to settle their differences as to CPR Nos. 1 through 129 for an agreed-upon amount of $5,000,000.00, with South-gate Penthouses LLC being afforded the opportunity to extend the payments over a fixed period of time, constituted the cause for the Settlement Agreement and Release and resulting promissory notes.
 

 In the Settlement Agreement and Release, the parties did recognize that other disputes existed between them, including alleged construction defect and warranty claims, disputes which defendants now attempt to assert as a defense to performance of their obligations under the Settlement Agreement and Release and
 
 *566
 
 promissory notes. However, as demonstrated in the documents themselves, the parties clearly agreed that those disputed claims were “specifically excluded” from, and thus formed no part of the | g/cause” for, the Settlement Agreement and Release and resulting promissory notes.
 
 [15]
 
 Thus, we find no merit to the defendants’ argument that there was a failure or lack of consideration or cause.
 

 Defense of Impossibility of Performance
 

 (Issue No. 5)
 

 Defendants next contend that the trial court erred in granting MAPP’s motion for partial summary judgment where MAPP’s conduct in performing defective construction work rendered payment of Promissory Note No. 1 inpoossible. Specifically, defendants contend that had MAPP not failed to complete the project in accordance with the construction contracts, the condominiums owned by Southgate Penthouses LLC could have been marketed during the post Katrina time period, which represented the most profitable time for residential housing sales in the history of Baton Rouge. Thus, defendants contend that MAPP’s failure to complete the condominium units and to solve the problems relating to moisture penetration and electrical defects “made the sale of the condominiums impossible,” which, in turn, rendered performance by Southgate Penthouses LLC impossible.
 

 In support of this argument, defendants rely upon the Louisiana Supreme Court’s opinion in
 
 Cox v. Department of Highways,
 
 252 La. 22, 209 So.2d 9 (1968). In
 
 Cox,
 
 the plaintiff had granted the Department of Highways a 30-foot right-of-way to widen a street, with the condition that the Department of Highways would remove a portion of the front of the plaintiffs building and reconstruct it in the rear. The plaintiff thereafter Issued the Department of Highways, alleging breach of contract.
 
 Cox,
 
 252 La. at 24-25, 209 So.2d at 9-10.
 

 However, the Supreme Court determined that plaintiff had been arbitrary in refusing to allow the Department of Highways to make the alterations to her property, thereby preventing the Department from performing its obligation. In reversing the award that had been rendered in the plaintiffs favor, the Supreme Court held that where a promisee makes performance impossible, the promisee cannot recover damages for the promisor’s failure to perform under the contract.
 
 Cox,
 
 252 La. at 27-28, 209 So.2d at 10-11;
 
 see also Gibbs Construction Company, Inc. v. Thomas,
 
 500 So.2d 764, 766 (La.1987). However, we find
 
 Cox
 
 to be clearly distinguishable from the matter before us.
 

 We note that while defendants contend that the sale of the condominiums was to be the primary source for the repayment of the obligation of Southgate Penthouses LLC to MAPP, the Settlement Agreement and Release and promissory notes make no reference to Southgate Penthouses LLC’s performance being contingent on the sale of the condominium units. Moreover, as stated above, the Settlement Agreement and Release and corresponding promissory notes constituted a compromise by the parties as to the amount of payment due for that additional or
 
 *567
 
 changed work set forth in CPR Nos. 1 through 129 pursuant to the Change Order Contract and did not encompass the other disputed claims between the parties, including warranty or defective construction claims, of which the parties were aware at the time of execution of the agreement and the promissory notes at issue.
 

 Rather, pursuant to the Settlement Agreement and Release, the parties specifically agreed to exclude those other claims from the settlement amount |sn(at least until such time as an arbitrator or court determined that a “credit” was actually due or owing). In defense to payment of the promissory notes and in defense to other obligations arising from the Settlement Agreement and Release, defendants are attempting to raise issues in this litigation, which the parties ultimately agreed to resolve through arbitration and which, according to the jury’s findings below, cannot serve to reduce or suspend the obligation of defendants under the Settlement Agreement and Release or the promissory notes until such time as an arbitrator or court specifically finds a “credit” to be due.
 
 [16]
 
 Accordingly, we find no error in the trial court’s rejection of defendants’ alleged defense of impossibility of performance.
 

 Defenses of Lack of Clean Hands and Lack of Performance by MAPP
 

 (Issue No. 6)
 

 In the Settlement Agreement and Release, the parties agreed that MAPP and Lionsway LLC, a limited liability corporation whose membership interest was owned solely by Robert and Janice Day, would enter into an Agreement to Purchase and Sell Lionsway Apartments and that, in the event of a default under Promissory Note No. 1, MAPP would receive “the ownership interest” in Lionsway’ Apartments, with Southgate Penthouses LLC being credited with a payment of $600,000.00. In accordance with this agreement, on the same day that the Settlement |S1 Agreement and Release was executed, MAPP and Robert and Janice Day entered into an “Agreement to Purchase and Sell Membership Interest of Lionsway LLC,” whereby the Days, as owners of the interests of Lionsway LLC, agreed to sell to MAPP “[s]eller’s [i]nterests in” Lions-way LLC, within thirty days after a default under Promissory Note No. 1. In its petition and in its motion for partial summary judgment, MAPP sought judgment for specific performance, ordering the Days to perform this obligation, and the trial court rendered judgment accordingly.
 

 On appeal, defendants contend that the trial court erred in its grant of MAPP’s motion for partial summary judgment by issuing a mandatory injunction ordering Robert and Janice Day to transfer their membership interests in Lionsway LLC to MAPP, where MAPP failed to properly perform its obligations under the construc
 
 *568
 
 tion contracts and, thus, was itself in default and where MAPP was not itself free from unlawful or inequitable conduct,
 
 i.e.,
 
 MAPP lacked clean hands.
 

 As to these alleged defenses, we note that defendants argue that MAPP failed to perform its obligations under the construction contracts, contracts which are not at issue in the present lawsuit, and also that it lacked clean hands due to its performance under the construction contracts. As addressed in several discussions above, the obligations at issue in the present suit are those arising under the Settlement Agreement and Release and resulting promissory notes and, in this instance, the resulting “Agreement to Purchase and Sell Membership Interest of Lionsway LLC.” In executing these agreements, the parties specifically contracted to exclude their remaining disputes regarding alleged defects and warranty claims under the construction contracts. As such, those claims cannot serve as a defense to performance herein.
 

 | ^Pursuant to this agreement, the Days, as owners of the interests of Lionsway LLC, agreed to sell to MAPP their interest in Lionsway LLC upon default of Southgate Penthouses LLC on Promissory Note No. 1, and we find no error in the trial court’s judgment granting that relief. For the sake of clarity and to ensure that proper credits be issued as agreed to by the parties, we specifically note that upon execution of the documents transferring the Days’ interest in Lionsway LLC to MAPP, Southgate Penthouses LLC will be entitled to a credit of $600,000.00 on the judgment for the balance due on Promissory Note No. 1.
 

 Personal Guaranty of Robert and Janice Day
 

 (Issue No. 7)
 

 In this argument, defendants that the trial court erred in its grant of partial summary judgment by recognizing and holding Robert and Janice Day liable for a $1,000,000.00 personal guaranty in favor of MAPP. Defendants argue that while, pursuant to the Settlement Agreement and Release, the Days were to execute a limited guaranty if certain conditions “did not occur,” such a guaranty was never actually signed or executed. Thus, they contend that the trial court erred in rendering judgment against the Days personally for $1,000,000.00 where the personal guaranty was never confected.
 

 We first note that the judgment rendered by the court held Robert Day only, and not Janice Day, liable for the $1,000,000.00 guai’anty. Nonetheless, as discussed below, based upon our review of the provisions of the Settlement Agreement and Release, we agree that this portion of the judgment must be reversed.
 

 A guaranty, or a promise to pay the debt of another, must be in writing to be enforceable.
 
 See
 
 LSA-C.C. art. 3038; LSA-C.C. art. 1821;
 
 Fleet Finance, Inc. v. Loan Arranger, Inc.,
 
 604 So.2d 656, 659 (La.App. 1st Cir.1992);
 
 Vezina and Associates v. Gottula,
 
 94-593 (La.App. 5th Cir.3/1/95), 652 So.2d 85, 89,
 
 writ denied,
 
 95-0825 (La.5/5/95), 654 So.2d 332. With regard to any personal guaranty by Robert Day in the instant matter, the Settlement Agreement and Release provides as follows:
 

 h. R. W. Day Development LLC, an entity related to Southgate Penthouses LLC[,] owns the property on Burbank Drive which is more fully described in Exhibit B to this Agreement (the “Property”). Note # 1 and Note # 2 shall be secured by a mortgage on the Property, subject to lender approval.
 

 [[Image here]]
 

 j. The parties acknowledge that the consent of the first mortgage holder
 
 *569
 
 is required in order for mortgage described in subpart (h) above to be placed on the Property. In the event that R.W. Day Development LLC is unable to obtain the consent of its lender to place the second mortgage on the Property within forty five (45) days after the date of this Agreement, Southgate agrees to provide alternative security to MAPP within forty five (45) days thereafter. Such alternative security may be in the form of a valid mortgage, in and on immovable property having a “net equity” value not less than the value of the security interest and mortgage that MAPP would have achieved had the mortgage on the Property been recorded, such amount being $1,323,000.00.... Alternatively, instead of granting a mortgage on alternative property, the additional security requirement can be satisfied by Robert W. Day granting MAPP a limited personal guarantee on the Note # 1, such guarantee having a maximum amount for which Robert W. Day may be liable to MAPP of $1,000,000.00. Such limited personal guarantee shall be form and substance substantially similar [sic] to the Continuing Guaranty Agreement executed of even date herewith by R.W. Day Development LLC; provided, however, that the guaranty of Robert W. Day shall contain a ninety (90) day notice and cure period for an [sic] default under the Note # 1 or Note # 2. [Emphasis added].
 

 A review of the contract provisions at issue herein reveals that the parties contemplated that Southgate’s obligation to provide alternative security to MAPP could be satisfied by Robert Day executing a personal guaranty at some point in the future, and only in the event that other security specifically contemplated could not be obtained. Thus, at best, l^the documents establish only the possibility that Robert Day would furnish such a guaranty in the future. MAPP has presented no other document to establish that such a guaranty was indeed thereafter executed by Robert Day. Accordingly, we must conclude that MAPP has not established its entitlement as a matter of law to a monetary judgment against Robert Day for $1,000,000.00 based on a purported (but non-existent) personal guaranty.
 
 [17]
 

 CONCLUSION
 

 For the above and foregoing reasons, the August 23, 2008 judgment is affirmed. The portion of the January 29, 2009 judgment recognizing a personal guaranty by Robert Day and entering judgment against him and in favor of MAPP, in the amount of $1,000,000.00, is hereby reversed. In all other respects, the January 29, 2009 judgment is affirmed. Costs of this appeal are assessed two-thirds against defendants Southgate Penthouses LLC, R.W. Day Development LLC, Robert Day, Janice Day, and Lionsway LLC, and one-third against plaintiff, MAPP Construction, LLC.
 

 AUGUST 23, 2008 JUDGMENT AFFIRMED; JANUARY 29, 2009 JUDGMENT AFFIRMED IN PART AND REVERSED IN PART.
 

 [1]
 

 . MAPP contended that the total amount due for the change orders was approximately $5,500,000.00, whereas Southgate contended that the total amount due was approximately $4,600,000.00 minus certain backcharges and construction claims.
 

 [2]
 

 . While the Settlement Agreement and Release was entered into on August 22, 2005, the document provided for an effective date of Februaiy 3, 2005, the date the Agreement in Principal had been confected.
 

 [3]
 

 . Paragraph 4 sets forth a payment schedule, providing for various contingencies.
 

 [4]
 

 . Also in July 2006, MAPP filed a demand for arbitration with the American Arbitration Association against Southgate Penthouses LLC and Southgate Residential Towers, LLC, for claims related to
 
 extra
 
 work under the construction contracts. Southgate Penthouses LLC and Southgate Residential Towers, LLC, then filed their own demand for arbitration as a counterclaim, alleging construction defects and MAPP's failure to perform the work in a good and workmanlike manner.
 

 Thereafter, Southgate Residential Towers, LLC and Southgate Penthouses LLC filed suit in district court against MAPP, Michael Polito as the major principal in MAPP, certain subcontractors, and various insurance companies, again asserting claims relating to alleged construction defects. However, this court granted a stay of those proceedings against MAPP, Polito, and MAPP's surety and insurers pending resolution of the arbitration proceedings as to these issues, given that the claims were subject to a valid contractual arbitration clause.
 
 Southgate Residential Towers, LLC v. MAPP Construction, Inc.,
 
 2007-0859, pp. 7-8 (La.App. 1st Cir. 12/21/07), 973 So.2d 177(unpublished);
 
 Southgate Residential Towers, LLC
 
 v.
 
 MAPP Construction, Inc.,
 
 2007-0489 (La.App. 1st Cir.6/26/07)(unpublished writ action),
 
 writ
 
 de
 
 nied,
 
 2007-1557 (La.8/31/07), 962 So.2d 442;
 
 Southgate Residential Towers, LLC v. MAPP Construction, Inc.,
 
 2007-0494 (La.App. 1st Cir.6/26/07)(unpublished writ action),
 
 writ denied,
 
 2007-1571 (La.8/31/07), 962 So.2d 442; and
 
 Southgate Residential Towers, LLC v. MAPP Construction, Inc.,
 
 2007-0685 (La.App. 1st Cir.6/26/07)(unpublished writ action),
 
 writ denied,
 
 2007-1572 (La.8/31/07), 962 So.2d 443.
 

 Accordingly, the issues relating to the alleged construction defects and claims arising under the construction contracts that were not compromised through the Settlement Agreement and Release are now being addressed through arbitration.
 

 [5]
 

 . The defenses that were raised included failure of consideration, impossibility of performance, the presence of a suspensive condition, lack of clean hands, an unliquidated damages claim, compensation and offset, accord and satisfaction, breach of agreement and lack of specific performance, estoppels, and any defenses of the guarantors. Robert Day, Janice Day, and Lionsway LLC also filed a «¡conventional demand against MAPP, seeking damages for MAPP's alleged wrongful filing of a notice of lis pendens against real estate owned by Lionsway LLC.
 

 [6]
 

 . The court indicated that, in reading the First Circuit opinion reversing its grant of partial summary judgment, it was “convinced that there is one issue and one issue only, and that is, what is the intention of the parties with regard to the credits.” The court further interpreted this court’s opinion as providing that the credit issue was "solely the issue sent back by the First Circuit.”
 

 While the trial court interpreted this court's prior opinion as presenting one issue to be resolved, MAPP, in its appellate brief, now asserts that this court noted in its prior opinion that “partial summary judgment was precluded only because there was a single
 
 ‘question of what credits should be applied to reduce the amount due on Promissory Note No. 1'
 
 ” and that “this Court mandated that the limited issue of the meaning of 'credits’ be remanded to the District Court for further proceedings.” (Emphasis added). In so suggesting, MAPP has mischaracterized this court's prior opinion.
 

 To the contrary, while, in conducting a
 
 de novo
 
 review of the appropriateness of summary judgment, this court noted that an issue of fact remained as to the intent of the parties as to the application of credits to the settlement amount and the corresponding amount due on Promissory Note No. 1, this court never stated that that was the single or sole unresolved issue. Rather, having determined that an issue of fact remained and, thus, that summary judgment was inappropriate, this court pretermitted the remaining issues raised in the previous appeal, including Southgate’s arguments regarding its affirmative defenses, and simply remanded the matter for further proceedings.
 
 See MAPP Construction, LLC,
 
 2008 CA 0012 at pp. 4, 8. Moreover, while this court did instruct the trial court to conduct any further proceedings as expeditiously as possible, this court did not in any way mandate or limit the proceedings to be conducted following remand.
 

 [7]
 

 . Through these two judgments, there has now been a final resolution by the trial court
 
 *558
 
 of MAPP's main demand. The only claim remaining before the trial courL relates to defendants' reconventional demand, through which they have raised a claim seeking damages against MAPP for MAPP's alleged wrongful filing of a notice of lis pendens against real estate owned by Lionsway LLC. Accordingly, because the judgments before us together represent final resolution of the main demand, those judgments are now properly before us on appeal.
 
 See
 
 LSA-C.C.P. art. 1915(A)(4).
 

 [8]
 

 . While defendants listed only three assignments of error in their appellate brief, those assignments of error encompass many issues. Thus, for ease of analysis, we have individually listed the issues presented, rather than simply setting forth the assignments of error.
 

 [9]
 

 . However, the article further provides that, except as otherwise provided under the provisions of LSA-C.C.P. art. 1562, there shall be but one trial. Louisiana Code of Civil Procedure article 1562 provides that, if it would simplify the proceedings or would permit a more orderly disposition of the case or would otherwise be in the interest of justice, the trial court may order, with the consent of all parties, separate trials on the issues of liability and damages or on the issue of insurance coverage.
 

 [10]
 

 . See footnote 6 above.
 

 [11]
 

 . On October 2, 2008, defendants filed a “Motion to Vacate Pretrial Order and Alternative Motion to Continue Trial.” In the motion, defendants contended for tire first time that the trial set for October 15, 2008 was an improper bifurcation of issues pursuant to LSA-C.C.P. arts. 1562 and 1736. The trial court denied the motion on October 7, 2008. Thereafter, at the trial of this matter, defendants again attempted to assert their objection to the trial as an improper bifurcation.
 

 [12]
 

 .Moreover, given the resolution herein as to the merit of defendants' asserted affirmative defenses, we further conclude that any error by the trial court in utilizing this procedure was harmless.
 

 [13]
 

 . Moreover, we note that in the appeal, defendants have not challenged the jury's factual findings regarding the parties' intent in confecting or executing the Settlement Agree-menl and Release and the promissory notes. Thus, the propriety of the jury's findings are not before us for review.
 

 [14]
 

 . We note that LSA-C.C.P. art. 1005 lists "failure of consideration” as an affirmative defense which may be pled. The inclusion of the terminology "failure of consideration” in LSA-C.C.P. art. 1005 at the time of its enactment was in accordance with the terminology of the former Civil Code articles addressing "cause.” However, when those Civil Code articles were amended in 1984 to remove the term "consideration" from the explanation of "cause,” the legislature failed to likewise amend LSA-C.C.P. art. 1005.
 
 See Aaron & Turner, L.L.C., 22
 
 So.3d at 916 n. 8.
 

 [15]
 

 . Moreover, while defendants contend in support of their asserted defense of failure of consideration that MAPP is not entitled to payment until the claims underlying this defense
 
 (i.e.,
 
 the construction defect claims) are litigated, the jury, in the limited jury trial below, specifically rejected defendants’ contention. Indeed, the jury found that South-gate did not have the right to stop making payments on the promissory note (or, in other words, suspend its performance) prior to an arbitrator or court making a determination on any backcharge, warranty or construction claim, a finding which defendants have not challenged herein as being manifestly erroneous.
 

 [16]
 

 . We further note that defendants rely on portions of Day’s affidavit to establish the alleged defense of impossibility of performance. However, even if we were to determine that the defense alleged could properly be asserted in defense to the obligations arising under the Settlement Agreement and Release and related notes, those portions of Day's affidavit relied upon by defendants were stricken by the trial court. As discussed above, we find no error in the trial court's ruling striking those portions of Day’s affidavit.
 

 Thus, the only evidence in support or opposition to the motion for partial summary judgment relating to defendants' ability to perform its obligations in paying the promissory notes consisted of a monthly cataloging of the rental revenue received from Southgate Residential Towers and Southgate Penthouses since the project’s inception. This document listed revenue for the residential rental units as totaling $12,496,540.06 and rental revenue from the penthouses as totaling $1,933,887.28.
 

 [17]
 

 . In so concluding, we render no opinion as to any rights of MAPP to enforce the provision of the Settlement Agreement and Release by seeking to require that Robert Day execute such a personal guaranty.